Let's start with DeStefano v. Pekin Insurance. Mr. Bergman for the appellants. Yes. Please proceed. Thank you. Good morning, Your Honors. May it please the Court. My name is Rich Bergman. I am here for the defendant and appellant in this matter, Farmers Automobile Insurance Association. This appeal comes to you from the Circuit Court of Madison County. Judge Barber has entered a judgment against Farmers in the amount of $75,000, which represents an amount of UIM insurance benefits that the Court ordered to be paid to Deborah DeStefano as mother and next friend of Caroline DeStefano. There really is one issue on appeal, but by virtue of the appeal, a second issue was created with respect to the correct standard of review. The plaintiff here alleges or asserts that the correct standard of review should be for abuse of discretion, and we would submit to this Court that the standard of review is de novo. While there was a bench trial below, there were no live witnesses. Judge Barber has decided a legal question, which is the interpretation of a provision in an insurance contract, which is a legal question, as you know. He decided that on documentary submissions, no live witnesses. This Court has before it everything that Judge Barber has had before him. The site of the case in our brief MQ construction, the site is 318 LF 3D 673, which kind of mirrors this case. It's not about UIM, but it is a case where there were no live witnesses. If it's not about UIM, how does it mirror the case? Well, it mirrors the case in that below, there was a bench trial. There were no live witnesses. The parties had submitted documentary evidence only, and the question was a legal question. Well, let's talk about the case, if you don't mind, that everybody seems to think is controlling out of the Fifth District. Absolutely. How about that? That is Farmers v. Poulsen, and I was going to get to that, because I think that is obviously the central issue here today. We have submitted to the Court that if the Court does follow its own decision in Farmers v. Poulsen, it would lead to a finding in favor of Farmers Automobile Insurance Association, that Farmers is entitled to set off from its UIM limits $49,900 paid by the United States to the plaintiff here, on behalf of the underinsured motorist who is Donald Springer. So why do you think the Court below didn't do that? I think the Court below didn't do that because Judge Barbaras believed that there was no potential for double recovery, as was stated in his order. I also believe that he may have come to the conclusion that there was some sort of independent liability that was being sought on behalf of the plaintiffs against the United States government. And if you take a look at the record and the documents and the depositions, all the evidence that the plaintiffs point to you for that point, I would say that there is absolutely no support in the record other than the Plaintiffs' Counsel's assertions that there is any or was any independent liability on behalf of the United States government. As the Court knows in Coulson, that was a critical fact the Court relied on in order to state that the UIM provision, the exact same UIM provision in the Farmer's Policy, did not allow farmers to set off $410,000 that the claimant received from the property owner and the subway franchisee. I'd just like to read exactly what the Court said there because I think it's very important. Our position in Coulson was that we were entitled to set off the $410,000 because it was an amount that was paid by a person or organization that was legally responsible. So the UIM provision in the Farmer's Policy reads as follows, the limit of liability for this coverage shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This Court stated that a literal interpretation of that provision was too broad, that it cast too wide a net. So it said, a literal interpretation would also frustrate the intent of the UIM statute, which is to place the insurer in the same position as if the UIM had been fully insured. So the parties agree that the provision of the policies are absolutely identical. There's no issue there. Absolutely identical. As in Coulson. As in Coulson. There's no issue there. Really the only issue here, the way that we see it, is whether or not there was any independent liability on behalf of the United States. Let me ask you a hypothetical. If the release in this case had designated $25,000 was attributable to the negligence of the employee and the remainder of the $49,000 was not attributable to the employee, do you think that then there would have been an obligation to pay by farmers? Had there been a designation? There was a designation in the release that X amount was to extinguish the liability of the United States that was independent from the underinsured motorist's liability. Absolutely. So you do agree that under that hypothetical you would have been obligated to pay? Under that hypothetical, yes, we would not have been allowed to set off that amount. We would only have been allowed to set off the amount that was paid on behalf of the underinsured motorist or that was paid for the United States vicarious liability based solely on the negligence of its employee. So your argument really is based upon the overbreadth of the release, that there's no distinction between how this money was paid and that there seems to be a catch-all in the release as well as the allegations of the complaint that this was a respondeat superior kind of thing. It was acting within the scope of his employment. Right, but I wouldn't say that the release was not specific. I would say that the release actually stated in paragraph 4, and this is at the record, page 380 through 381, that it was entered into for purposes of compromising disputed claims under the Federal Tort Claims Act. Now, when the case was settled, there was no dispute. There was no disputed claim that the United States was independently liable. In the trial court, plaintiff's counsel asserted that there were allegations in the Federal Tort Complaint that the United States was independently liable because it failed to enforce its own rules and regulations. Now that was in the complaint? That's what plaintiff's counsel stated to the trial court was in the complaint, but if this court takes a look at the actual allegations of the underlying complaint or the Federal Tort Complaint, it will not find those allegations anywhere. The Tort Complaint is based solely on the negligence of Donald Sprenat, who is acting within the course and scope of his employment as a rural mail carrier at the time of the accident. So the fact that the U.S. Postal Service has a policy of rural carriers should not drive on private property, that came to the light of the trial court. Are you saying by way of argument of counsel or in the complaint? It was not in the release, obviously. It was not in the release. It came to the court's attention by way of argument of counsel, and there is some sort of inference or implication that you can make that there could be a potential theory there based on some deposition testimony of Donald Sprenat and another employee of the United States government. But it never came to fruition. Nothing ever came together. Now it's submitted to the court that the reason why it never came together is because you cannot sue the United States for failing to enforce its own rules and regulations. You can sue the United States under the Federal Authorities Act for responding to superior liability for the acts and omissions of its agents in the scope of their employment, absolutely. Well, but if there's a supervisor who fails to enforce the protocols and obligations and policies, you're suing the government for that. I mean, you can't sue the government as a governmental entity, but somebody has to enforce the policies. So to make a statement that you just can't sue the government for failing to enforce its policies doesn't seem to me to be genuine. And if that is incorrect, the fact of the matter is that the court takes a look at the record in this case and all of the evidence that was submitted. There is absolutely no claim that has or was made under the Federal Court Claims Act for the independent liability of the United States. It just was not there. So as Justice Schwarm just asked then, none of the pleadings are going to raise that issue, when we look at the pleadings. Absolutely not. None of the pleadings are going to raise the issue. The issue is raised by argument of counsel, and there is potentially something in the deposition testimony that somebody could make a claim, I guess. I don't know. I mean, it's hard for me to speculate because it was never made. And that's the point here. It was never made, and at the time of settlement, it wasn't contemplated within the settlement because it wasn't claimed. But we can make a decision based on what's in the record. It doesn't have to be limited to the pleading. I mean, if there's deposition testimony, I mean, our conundrum, I guess, is assuming that there was independent liability, our conundrum, I guess, at this point is how that would be divided under your argument. Under my argument, right. And in the plaintiff's counsel, the plaintiff knew that this case had been pending for a while. It had stayed for a while because we were waiting on what was going to happen in the federal case. And the plaintiff knew that this was going to be an issue. This case has been front and center from essentially day one. And knowing that, I just can't conceive why it wasn't something, other than the fact that there was no independent liability that the United States was willing to concede as part of the settlement, that that was not actually delineated in the settlement agreement. Why wasn't it parsed out? And the reason why is because there was no independent liability. Plaintiff's counsel points to an email from the assistant U.S. attorney. That's at record site 377. The proposition that the United States was extinguishing its own independent liability. Doesn't your paragraph 18 in the stipulation before the Madison County court somewhat contradict that? Paragraph 18, I believe, states that the plaintiff claims that there is independent liability on behalf of the United States. So it contradicts your prior statement that there was no claim by the plaintiff that there, in fact, was independent liability. I don't believe it does because I could not refute that fact because that indeed was the argument of plaintiff's counsel in this case. He continued to state that he was making a claim against the United States for its independent liability. I had to stipulate to that fact because that's what he was telling me that he was arguing. But he wasn't. I mean, stipulation is a stipulation. You've agreed to that fact before the court. So it's now a little difficult to argue to the contrary. Let me ask you this. In light of paragraph 18, let's say the trial court found that there was 49,000 and some odd dollars attributable to the independent negligence of the federal government. Do you think the court could – that this court could remand the case for determination of that fact? Well, if that was the case, if the release did state that it was – that the United States paid $49,900 to distinguish its own – extinguish its own independent liability, we wouldn't be here because that amount – No, that wasn't my question. I'm sorry. My question is, do you think in light of the record and the fact that the – as Justice Goldenherz pointed out, that there is a stipulation that plaintiff argues the proximate cause was the negligence of the government through the failure to enforce, et cetera. Do you think that the trial court could have apportioned, based on the evidence, that the trial court could have apportioned the award? I believe the trial court could have done that, but I believe in this case that it absolutely did not. Oh, I know it did not, but I'm wondering if you think that's a procedural thing that the court could have done. It's a procedural – sure, it's a procedural thing that the court could have done. It could have looked at the settlement and compromise, and it could have said, I find that this agreement was entered into for the sole purpose of extinguishing the liability, the independent liability of the United States, and therefore the farmers isn't entitled to set off this amount. Do you think it did that in a de facto basis by not allowing the setoff? I think if you look at it in hindsight, you can say that, absolutely. But I don't think at the time that it did that, that's exactly what the court was doing. I understand that the review is de novo, and the court can affirm for any basis in the record, and if the court wants to affirm on that basis, it can. But, again, going back to the stipulation, the stipulation was that that's what the plaintiffs were arguing. And when I entered into that stipulation, it was my design that I was just admitting the fact that that was an argument that was being advanced. It was not designed to be an admission that that was actually what was being claimed in the federal case. So I hope the court can take that into consideration here and not really hold that against farmers. Because I do believe that throughout this entire case, the distinguishing fact between this case and Coulson was evident. And there was an attempt and an obvious attempt to try very hard to sweep this case within the Coulson kind of reach. And the only way to do that was for Plaintiffs' Counsel to establish that there was some independent liability on behalf of the United States. And, you know, you look at the underlying, you look at the federal tort complaint, and it never changed. There was never an amendment. There was never anything. All there was was this complaint that alleges solely vicarious liability and then a settlement that indicates that it was entered into for purposes of, you know, resolving disputed claims under the Federal Tort Claims Act. And at the time, that was the only disputed claim under the Act. So I believe that those facts make this case distinguishable from Coulson. But if the court follows its prior ruling in Coulson, based on those distinguishing facts, farmers is entitled to set off $49,900 for this UIM woman, which, in addition to the $25,000 that was paid by Progressive, leads to a total setoff of $74,900. Have you tendered the remainder? Yes. So you've tendered the difference to the plaintiffs? We tendered the difference to the plaintiffs. The plaintiffs didn't accept it, obviously, but we tendered that after the settlement was entered into between the plaintiffs and the United States. If there aren't any other questions, for those reasons and all reasons stated in the brief, I'd ask that the court reverse. Thank you, Counsel, and you'll have the opportunity for a rebuttal. Thank you. Argument for the appellees. Good morning, Your Honor. My name is Lanny Darr, and I represent the DiStefano family. The only person that doesn't believe that there was independent liability on behalf of the U.S. government is Pekin Insurance Company. I think it's quite clear. One of the errors was there was a motion pending in federal court to amend the complaint to be more specific about independent acts of negligence when this case was settled. Mr. Burke, the U.S. attorney, or assistant U.S. attorney handling the case, sent an email saying that they thought it was in the best interest of the U.S. government for them to settle this case. They settled the case. So there was independent acts of negligence on behalf of the U.S. government that were extinguished by that release. In our particular case, though, as the record reflects, there were motions for summary judgment on this issue brought before the trial court on a couple of occasions, and they were denied on a couple of occasions. And one of the basis for the denials that's in the record was because the court wanted to have a trial on whether or not there was independent acts of negligence on behalf of the United States government. I'm sorry, Mr. Darr, I didn't catch that. They denied the motion for summary judgment because the court wanted to make a decision. Right, so why didn't that happen? It did happen. That was the non-jury trial. That's why it was sent over for a non-jury trial. And as part of that non-jury trial, instead of halting all these witnesses, because the facts were basically undisputed, what was not disputed or what was and what remained in dispute was the inferences to be drawn from those facts. And that's what the trial court had to do. The trial court had to consider all that evidence, including the discovery depositions, which the party stipulated to, which would be the trial testimony had they appeared. And the court had to draw inference from those facts. That's why the standard of review in this case has to be manifest way of the evidence, because the court did consider the facts and drew inferences from those facts. And the facts that the court concluded was that there were independent acts of negligence that were involved in the federal court case, and it wasn't just a vicarious liability claim. Therefore, the court found that there was no right to set off because that money was not paid on behalf of an underinsured motorist. It was paid to extinguish the claims of the U.S. government. Counsel, make sure I got this right. There were depositions of some Postal Service employees that talked about this policy in the Postal Service, which may have created some independent liability of the government. And then you say also in the federal case, you'd file a motion to amend your pleadings there to – and is that in our record, the motion to amend? I would not believe it. That's why we have stipulation 18 or paragraph 18, because those were the contentions of the plaintiff that there were – that was part of that. But yes, to back up a little bit, there were two depositions. There was Mr. Spernon's deposition and Ms. Kohler's deposition. Ms. Kohler was the supervisor of the rural route carriers in Calhoun County. And there was great debate during those depositions as to the existence of these policies that were created by the federal government as to whether or not they were being enforced or whether they needed to be enforced and things along those lines. And there was discussion of, well, we don't really follow those or we don't need to follow those, and the rural route carriers need to deliver the mail and not worry about driving on private property. So as their supervisor, there was the allegation by the plaintiff that those were independent acts of negligence by the federal government. The trial court had denied the motion for summary judgment and said, I agree, I want to have a trial on this and find out what I deduce from these facts, this testimony. And the testimony was what was in the transcript, and the transcript is what's part of the record. And the court, after hearing that, said, yeah, there were independent acts there, so they're not uninsured workers. The problem, I guess, Mr. Dar, is that we're, at least I, am left with this order that says there's not going to be a set off because there's no double recovery. When it would have been so easy for the trial court to have just made it clear that these were for independent acts, as you allege. I'm not sure what, are we supposed to make that quantum leap from double recovery to what your argument is? That's my only. The order may not be as artfully crafted as one would like, as I'm standing here today defending it. But there's also a presumption that the judge heard all the evidence and understood that. And that's the case what he did. And there was an argument of, part of the stipulation was that there wasn't a double recovery. That this girl was hurt greater than all of the money that was going to be flowing to her. And that's exactly what I'm concerned about, is there's no double recovery in that everybody stipulated that $100,000 would not possibly cover the tragic loss suffered by this family. So, we see so many cases where the $100,000 and the $100,000 wipes each other out, you know, because that's the way it works with no stacking. So, that's why my concern is this double recovery. It's so unclear to me what the court was doing. And yet, I understand your argument, and I think you would probably agree with me that had the court delineated, we probably wouldn't be arguing about this. Well, right, but I mean, you know, in defense of the trial court, the trial court was asked the simple question of, is there a set off? And the court concluded, no, there is no set off with $49,900. And we're left with the presumption of he considered all the facts, all the evidence, and answered that question based upon the evidence that was presented to him, which was that there was independent acts of negligence that does not constitute a payment of an underinsured motorist. There was independent acts there. So, I think we just have to go with that presumption. And if the standard of review is a manifest way to the evidence, there would have to be some part of the record which would say that this was patently wrong, what the trial court did. And there's just nothing in this record that would suggest that. It's to the contrary that everything suggests that the government wanted to settle the case. They did. And something that else is not really going to argue too much except briefly in my appeal, which is even if you look at the definition of uninsured motorist or underinsured motorist, under the policy, the U.S. government doesn't fit that definition. They're not a separate policy or bond which would be in place here. They're a self-insured entity, and they paid cash. So, when you look at the farmer's policy, the policy gives them credit for payments made under other insurance policies or bonds. And that's just not what was paid here. This was paid here by a completely self-insured entity. Was that argument made below? Yeah. I mean, it's made below. And it's part of our brief. But, I mean, when you just look at the policy language, I mean, I think this court could affirm on any basis contained in the record, which the policy is in the record and it's clear. But, you know, that's our fallback argument, which the greater argument is just this was an independent door teaser that made a payment and not an underinsured motorist. They're not an underinsured motorist by any stretch of the imagination. And the liability payment that was made by the rural rail carriers policy is a liability payment for which they got credit. That's all. Anybody has any questions? If not, I'll. No, thank you, counsel. Thank you. Mr. Berland, do I need a rebuttal? Thank you. First of all, with respect to the pending motion to amend the complaint, I never saw the motion to amend the complaint. It's not in the record. I have no reason to not believe counsel. But given the fact that this was such a crucial issue at the time, I'm just very curious that that was not brought to the circuit court's attention and it was not actually placed into the record on appeal. So what we have here. It wasn't in the record before the trial court either? It was not. You guys, your honors have before you everything that the circuit court had before it. If the circuit judge had any doubt about either the existence or the contents of this proposed amended complaint in the federal court, do you think the trial judge would have accepted paragraph 18 of the stipulation or told the parties it's out or show me that it exists? Can you point to anything in the record that indicates that Judge Barbera has had any doubt as to the authenticity of the claim of the stipulation in paragraph 18? I cannot, but again, I go back to my prior argument that the stipulation in paragraph 18 wasn't meant to, wasn't designed as an admission of the fact that a claim was actually being asserted. It was just an admission that that was the argument of claims counsel, that all of this evidence showed that there was independent liability on the part of the United States, that that was indeed their argument, not that in fact there was independent liability on behalf of the United States. But to kind of answer your question a little bit differently, this case kind of bounced around and it was before Judge Platt who didn't want to enter a summary judgment, denied in fact both parties' motions for summary judgment because he wanted to know and he knew what the real issue was. He said, I want to know and I think there needs to be a trial here on whether or not the United States has any independent liability. And Judge Barbera said we, again, after the case kind of bounced to him, we refiled their motions for summary judgment and they were denied once again. Judge Barbera said the same thing. I want to see some evidence from you guys as to why you believe plaintiffs that there is independent liability on the part of the United States. And so Laney and I agreed that we could have a bench trial and just submit everything pursuant to stipulations stipulated in the exhibits so the court would take a look at those and make a decision. Because frankly we believe that the issue could have been decided on summary judgment. So we showed up and prepared our arguments. The court took a look at all the documentary evidence and it came to the conclusion that it came. And as Laney indicated earlier, the order may have been an artfully drafted. And if it was more artfully drafted, maybe we wouldn't be here. But we are. And I would just like to point the court in the direction of the plaintiffs here because I believe it is their burden under Coulson to show that they were seeking independent liability against the United States government in this case. And that the amount of the payment that they received in the amount of $49,900 was a payment that was received because of the independent liability of the United States. And there's nothing in the record that supports that fact. There really isn't. And there was a stipulated bench trial. And apparently there was a motion to amend the complaint that was pending at the time that isn't in the record. Which I just – it's beyond me to understand that. I don't get it. With respect to the plaintiff's claim that the United States is not an underinsured motorist, the United States is not an underinsured motorist. But it is not an independent torque user. And, you know, it brings it back to this Coulson inquiry, I guess as I call it. If there is some independent liability, if the payment was made on behalf of an independent torque user as it was with Coulson, there's no settle. But if the payment was made on behalf of the underinsured motorist as a result of the underinsured motorist's negligence, then there's a settle. So I would say that the record here simply does not support the plaintiff's assertion that the $49,900 payment was made to extinguish independent liability on behalf of the United States. Again, for those reasons and other reasons stated in our briefs, ask that the court reverse. Thank you. Thank you, counsel. We'll take the case under advisement and we'll issue a written ruling to the courts. Let's take a break.